**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**IN ADMIRALTY**

ODYSSEY MARINE EXPLORATION, INC.

      Plaintiff,                                                                CIVIL ACTION

vs.

                                       Case No. 8:07-CV-00616 SDM-MSS

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, its apparel, tackle,
appurtenances and cargo located within
a five mile radius of the center coordinates:
provided to the Court under seal

                Defendant;
                in rem,

and

The Kingdom of Spain,

                Claimant/Defendant.

_____/

**Motion to Dismiss and for Other Relief**
**of Claimant-Defendant Kingdom of Spain**

    Claimant-Defendant Kingdom of Spain ("Spain"), by its undersigned counsel, hereby

moves pursuant to the Supplemental Rules of Admiralty and Federal Rule of Civil Procedure

12(b) to dismiss Plaintiff Odyssey Marine Exploration, Inc.'s ("Odyssey") Amended Complaint

filed on August 6, 2007 (Dkts. 26, 29), and for other relief as set forth below.

**Memorandum of Law**

    Odyssey's Amended Complaint is subject to dismissal because (1) it once again fails to

describe the Defendant <u>res</u> with reasonable particularity as required by Supplemental Rules

C(2)(b) and E(2)(a), and (2) its new <u>in personam</u> claims, as applied to Spain, were not properly

served, are outside this court's jurisdiction, and impermissibly require adjudication of sovereign acts of state.

First, Odyssey's Amended Complaint conspicuously fails to remedy Odyssey's non-compliance with what the Supplemental Rules say that "the complaint must contain," even though Odyssey has specific information about the property and Spain formally requested this information in a Motion for More Definite Statement filed June 19, 2007 (Dkt. 16). Because of Odyssey's persistent and willful disregard for the Supplemental Rules, Spain respectfully moves to dismiss Counts I and II of Odyssey's Amended Complaint (i.e., those directed against the Defendant res), to vacate the arrest of the Defendant res, and to terminate Odyssey's appointment as the res' substitute custodian. As a necessary corollary of dismissal, Spain requests that all artifacts taken from the shipwreck and in Odyssey's custody be returned to the custody of the U.S. Marshal, pending return to their rightful owner.[1]

Second, Spain also moves to dismiss the Amended Complaint's three new counts (Counts III, V, and VI), as well as Count IV.[2] These counts seek to bring in personam claims against Spain, and are subject to dismissal for, inter alia, non-compliance with summons and service requirements, sovereign immunity, and the Act of State doctrine.

---

[1] Spain also requests that Odyssey be ordered to comply with that portion of Spain's June 19, 2007 Motion for More Definite Statement and Other Disclosure which sought inspection of the artifacts by Spain. Spain's Motion for More Definite Statement, at 10 (Dkt. 17). Odyssey did not oppose this relief in any filing made in response to Spain's motion. See Amended Complaint at 1 (Dkts. 26, 29) ("[Odyssey] . . . hereby states that it does not object to Claimant's Motion . . . ."). Accordingly, Spain hereby renews its request as part of the relief sought by this motion.

[2] Count IV seeks a declaratory judgment that, inter alia, "[n]o government [i.e., Spain] . . . has the authority to interfere with Odyssey's exploration of the Defendant Shipwrecked Vessel, or to grant, condition or deny the right of Odyssey to do so within the waters of the Mediterranean Sea . . . ." Amended Complaint ¶ 41 (Dkts. 26, 29). Insofar as this Count may be construed as a claim directed against Spain, it is equally barred as other in personam claims against Spain, as discussed herein.

I.    Odyssey's *In Rem* Claims Are Subject to Dismissal Because They Once Again Fail to Comply with Supplemental Rules C and E.

The requirements of the Supplemental Rules are explicit: in order for a plaintiff to bring a valid in rem claim in admiralty against a defendant property, "the complaint must . . . describe with reasonable particularity the property that is the subject of the action." Supplemental Rule C(2)(b) (emphasis added). More specifically, the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation and to frame a responsive pleading." Supplemental Rule E(2)(a). This heightened pleading requirement is "more stringent than [] that of the Federal Rules." United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1547 fn.20 (11th Cir. 1987). The purpose of this heightened pleading standard is to "guard against the improper use of the admiralty arrest and seizure powers," United States v. Mondragon, 313 F.2d 862, 864-65 (4th Cir. 2002), by, for example, keeping the owner or others with potential interests in the property in the dark about the property subject to the claim.

When the property claimed is a shipwreck, the plaintiff must disclose information in its possession which would assist in identifying the property at issue because this information is critical for others to evaluate their interests in the property. For example, a description of the artifacts that have been recovered or observed and of the characteristics of the vessel is basic information needed to assess the property's origin and potential ownership. If the plaintiff knows or has reason to know the identity of the vessel, that information must be included above all in the complaint. See Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878, at *4 (W.D. Mich. Nov. 20, 2006); Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218, 1231 (S.D. Ala. 2005). When a plaintiff is given a second chance

to provide this information in an amended complaint, but fails to provide it, dismissal is appropriate. See Fed. R. Civ. P. 41(b) ("For failure of the plaintiff . . . to comply with these rules . . . , a defendant may move for dismissal of an action . . . .); Great Lakes, 2006 WL 3370878, at *4.

The need for strict compliance with the Supplemental Rules' pleading requirements is obvious and compelling as a matter of fundamental fairness and due process. The plaintiff in an in rem case seeks to use the judicial process to obtain rights to the property of another. Every step required by the rules must be scrupulously followed to make sure that potential claimants to rights in that property may determine whether it is theirs and to protect their interests. Failure to comply with the disclosure requirements of Supplemental Rules C and E warrants dismissal not only for failure to state a valid claim, but also as a matter of constitutional due process. See Great Lakes, 2006 WL 3370878, at *5. Moreover, full compliance with Rules C and E is especially important in a "treasure salvage case" because allowing the plaintiff to proceed while the property has not been identified "could encourage potential salvors to intentionally remain ignorant of the ownership of a wrecked vessel in order to maintain salvage rights. That is certainly not in harmony with the purposes of salvage law." Sea Hunt, Inc. v. Unidentified Shipwrecked Vessel or Vessels, No. 98-281, 1999 U.S. Dist Lexis 21752, at *12 (E.D. Va. June 25, 1999), aff'd, Sea Hunt, Inc. v. Unidentified Shipwrecked Vessel or Vessels, 221 F.3d 634, 638 (4th Cir. 2000). This is precisely what Odyssey has done here.

In its initial April 9 Complaint, Odyssey conspicuously failed to disclose the identity of the shipwreck it claims in this case and of the artifacts it has taken from the site. The Complaint states that the Defendant res is "believed to be an Italian-registered passenger ship which sank in 1915 during World War I" and is located "approximately 65 miles southeast of Sardinia in the

- 4 -

Mediterranean Sea." See Verified Complaint in Admiralty in Rem ¶¶ 2, 8 (Apr. 9, 2007) (Dkt. 1) [hereinafter "Complaint"]. The wreck site, which was videotaped and photographed by Odyssey, is described as consisting of "vessel remains, ship furnishings, and fixtures including numerous brass objects." Id. ¶¶ 7, 9. The Complaint also states that Odyssey "has documented several objects it has found" on the site and that its research "has led it to believe that more valuable cargo may be located aboard the ship." Id. ¶¶ 7, 11. Yet, the only artifact described in some detail was the "teacup" submitted to attain a symbolic arrest of the res. See id. ¶ 10. These averments strongly suggest that Odyssey knew or had reason to know the identity of the vessel at the time it commenced this action, but deliberately omitted that information from the Complaint.

The Amended Complaint filed on August 6, 2007 again fails to provide identifying information in Odyssey's possession about the property it claims in this case. Indeed, Odyssey's Amended Complaint contains less information about the property than its original Complaint.[3] Following the filing of Spain's June 19, 2007 Motion for More Definite Statement (Dkt. 17), Odyssey sought an extension of time to respond, with the representation to the court that the amended complaint "may render moot" any need for a more definite statement. Motion for Extension of Time to File Response/Reply at 2 (July 23, 2007) (Dkt. 20). Odyssey's Amended Complaint does anything but "moot" compliance with the requirements of Supplemental Rules C and E. The Amended Complaint contains no disclosure of the identity of the ship that Odyssey researched and located, no information about what Odyssey has seen and photographed at the

---

[3] Specifically, Odyssey omitted averments about the items observed at the wreck site, details about the teacup submitted for symbolic arrest, and the wreck's location vis-à-vis Sardinia. Compare Complaint ¶¶ 2, 7-8, 10, with Amended Complaint ¶ 2, 9, 15, 17.

site, no information about the artifacts that Odyssey has retrieved from the site, and no clarification of the vessel's location.

Far from complying with Supplemental Rules C and E, Odyssey's Amended Complaint states that "there is nothing which would require that the Kingdom of Spain or any other third party be given any more specific information other than what is contained in this Amended Complaint and the Exhibits which are part of the public record." Amended Complaint ¶ 18. Odyssey has staked out a position that it simply is not willing to do what the rules require. Accordingly, the admiralty claims in its Amended Complaint should be dismissed. Odyssey ought not be allowed to play "hide and seek" any further.[4]

Relevant case law construing Supplemental Rules C and E in shipwreck cases makes clear that Odyssey has twice failed to meet its pleading requirements. Specifically, courts have held that the Supplemental Rules require full disclosure of the information a plaintiff has about the res in the complaint. In Fathom Exploration v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218 (S.D. Ala. 2005), a plaintiff claimed rights to a shipwreck under the law of finds and salvage, but did not identify the res in its complaint. The United States and the State of Alabama intervened as claimants and moved under Supplemental Rules C and E for a more definite statement identifying the shipwreck and its location. Id. at 1219, 1221. As a threshold matter, the court questioned "the propriety of bringing in rem actions against unidentified vessels in light of the stringent particularity requirements of the Supplemental Rules." Id. at 1224 fn.7.

---

[4] In its Amended Complaint, Odyssey also refers to a "Preliminary Site Assessment Report" and says "it will present that to the Court under seal." Amended Complaint ¶ 18. Spain files herewith its opposition to Odyssey's Motion for a Protective Order Regarding Preliminary Site Assessment and incorporates it by reference. Odyssey's suggestion that it may provide "selected information" from the "Preliminary Site Assessment" to Spain only in a sealed document subject to unworkable and inappropriate restrictions, as discussed in Spain's opposition to that motion, does not bring it into compliance with the Supplemental Rules' specific requirements concerning what "must" be in the Complaint.

The plaintiff was therefore required to file an amended complaint "to bring it into compliance with the Supplemental Rules." Id. at 1225. The court found that the claimant's "preoccupation with seeking further details of the shipwreck is entirely appropriate." Id. at 1226. The court concluded that the plaintiff could not withhold information from its "now months-old research and salvage efforts" which was "likely available to [the plaintiff] at th[at] time and would be of profound assistance to the state in shaping its initial investigation and framing an Answer." Fathom, 352 F. Supp. 2d at 1226. The plaintiff was accordingly ordered "to relate in its complaint reasonably available information concerning the location, nature, and embedded status of the wreck on which salvage operations are being conducted." Id. at 1227 (emphasis added).

Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878 (W.D. Mich. Nov. 20, 2006) shows the consequences of a plaintiff's failure to remedy a deficient description of a shipwreck in an amended complaint. In that case, the plaintiff's initial complaint provided far more information than Odyssey has in this case, including the location of the shipwreck within a 3.5 mile area. Great Lakes, 2006 WL 3370878, at *1. The plaintiff also identified the shipwreck as a "vessel [that] was owned by a foreign research expedition operating with the authority of, and possibly under the auspices and/or control of, a foreign sovereign until it became wrecked, lost and abandoned." Id. Nevertheless, the court refused to issue an arrest "because the complaint did not comply with the requirement that the property be described with reasonable particularity." Id. An amended complaint was then filed which included further information on the characteristics of the vessel. Id. State of Michigan agencies then intervened and moved to dismiss for failure to provide the precise location of the vessel, information that was necessary to determine potential ownership rights in the vessel and for a claimant to frame a responsive

pleading. Because plaintiff's amended complaint failed to disclose information known to plaintiff which was "important to defining Defendant," the court dismissed the case. See Great Lakes, 2006 WL 3370878, at **4-5. The court reasoned that:

> The second amended complaint does not meet the 'reasonable particularity' requirement because it [does] not disclose a part of Defendant's description that is known to Plaintiff and which is important to defining Defendant.

Id. at 4.

Here, Odyssey has had the opportunity and the ability to bring itself into compliance with the rules. Odyssey has failed to do so. Consequently, dismissal is appropriate. As a necessary corollary of its motion to dismiss, Spain also moves for vacation of the arrest issued on April 12, 2007. Vacation of the arrest must follow from failure to comply with the Supplemental Rules. Supplemental Rule C provides that an arrest may be issued "[i]f the conditions for an in rem action appear to exist." Supplemental Rule C(a)(i). These conditions exist only when the plaintiff complies with, inter alia, the pleading requirements for admiralty suits in rem and quasi in rem. As the court explained in Great Lakes:

> To establish that the conditions for an in rem action have been met, Plaintiff must meet the requirements of Supplemental Rules C(2) and E(2)(a). The requirements for the issuance of an arrest warrant are required by due process. . . . Plaintiff has not complied with the requirements of Supplemental Rules C(2) and E(2)(a). . . . Until Plaintiff complies with the requirements of Supplemental Rules C(2) and E(2)(a), the issuance of an arrest warrant would be improper.

Great Lakes, 2006 WL 3370878, at *5 (emphasis added and internal citations omitted).

Accordingly, Claimant Spain respectfully requests dismissal of Odyssey's claims against the res in this case, vacation of the arrest, and termination of appointment of Odyssey as substitute custodian.

II.    Plaintiff's *In Personam* Claims Against Spain Are Subject to Dismissal for Improper
       Service, Lack of Personal Jurisdiction, and Lack of Subject Matter Jurisdiction.

In its Amended Complaint, Odyssey added several in personam claims against Spain

which are subject to dismissal under Federal Rule of Civil Procedure 12(b). Specifically,

Odyssey's Amended Complaint seeks to bring new claims for injunctive relief against Spain

(Count III), quasi-contractual relief aimed at Spain (Count V), and damages against Spain (Count

VI). Additionally, Count IV operates in personam as to Spain since it requests this court to

declare that "[n]o government [(i.e., Spain)] . . . has the authority to interfere with Odyssey's

exploration and/or recovery of the Unidentified Shipwrecked Vessel, or to grant, condition or

deny the right of Odyssey to do so within the waters of the Mediterranean Ocean . . . ." See

Amended Complaint ¶ 41; id. at 16. As in personam claims against Spain, these counts are

subject to dismissal for lack of service, personal jurisdiction, and subject-matter jurisdiction

under the Foreign Sovereign Immunities Act ("FSIA").

A. *Odyssey's* In Personam *Claims Against Spain Were Not Properly Served.*

Odyssey's new in personam claims against Spain must comply with special statutory

service-of-process requirements applicable to claims against foreign sovereigns. The FSIA

requires that service in U.S. courts "shall be made upon a foreign state" in accordance with

specific procedures. 28 U.S.C. § 1608(a) (Supp. IV 2005).[5] Those seeking jurisdiction over a

foreign state in U.S. court must follow this procedure, as "there is no excuse for departure from

_____

[5] Specifically, the FSIA requires that service be made (1) in accordance with special arrangements for service
between the plaintiff and the foreign state; (2) by delivery of the summons and complaint in accordance with an
applicable international convention on service of judicial documents; or (3) by sending copy of the summons and
complaint, and notice of suit, as well as translations of each, by mail requiring a signed receipt sent by the clerk of
the court to the head of the ministry of foreign affairs of defendant or to the U.S. Department of State. 28 U.S.C. §
1608.

the dictates of the statute." <u>Harris Corp. v. Nat'l Iranian Radio & Television</u>, 691 F.2d 1344, 1352 (11th Cir. 1982); <u>see</u> <u>Shell Oil Co. v. M/V Itanage</u>, 830 F. Supp. 1423, 1425 (M.D. Fla. 1993) (concluding that the fact that a defendant has notice of the claims against it does not alone excuse failure to meet FSIA's service-of-process requirements).

Here, even though Odyssey lodges claims against Spain (which, of course, is a sovereign country), there is no indication that Odyssey has attempted to serve Spain in accordance with the FSIA.[6] Consequently, Odyssey's new <u>in personam</u> claims against Spain should be dismissed for failure to provide service of process. <u>See</u> Fed. R. Civ. P. 12(b)(5).

B. *This Court Lacks Personal Jurisdiction to Hear Odyssey's* In Personam *Claims Against Spain.*

There is no personal jurisdiction over Spain as an <u>in personam</u> defendant in this case because Spain has not been properly served and because no exception to Spain's sovereign immunity applies. The FSIA states that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction . . . where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). As discussed immediately below, Spain is immune from subject matter jurisdiction in this case. As discussed immediately above, Odyssey ignored the FSIA's service-of-process requirements when it decided to file <u>in personam</u> claims against Spain. Consequently, these claims should be dismissed for lack of personal jurisdiction over purported defendant Spain. See Fed. R. Civ. P. 12(b)(2).

---

[6] In addition to the FSIA's statutory mandate, Odyssey also ignores the requirements of the Local Rules of this court. <u>See</u> Local Rule 7.01(h) (requiring issuance of summons and service of process for all <u>in personam</u> claims brought in admiralty cases, unless otherwise ordered by the court).

C. *The Court Lacks Subject Matter Jurisdiction to Hear Odyssey's* In Personam *Claims Against Spain.*

Under the FSIA, a foreign state is immune from the jurisdiction of U.S. courts except as a

defendant in a cause of action covered by at least one of the statutory exceptions. 28 U.S.C. §§

1330(a), 1604. Section 1604 of the Act provides as follows:

> Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act a foreign state shall be immune from the
> jurisdiction of the courts of the United States and the States except as provided in
> sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604. As the Supreme Court, the Eleventh Circuit, and this court have made clear,

the FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts."

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989); Samco Global

Arms, Inc. v. Arita, 395 F.3d 1212, 1214 (11th Cir. 2005); Dominican Energy Ltd. v. Dominican

Republic, 903 F. Supp. 1507, 1512 (M.D. Fla. 1995). The Supreme Court has said that:

> Under the Act, a foreign state is presumptively immune from the jurisdiction of
> United States courts; unless a specified exception applies, a federal court lacks
> subject-matter jurisdiction over a claim against a foreign state.

Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) (internal citations omitted).

Hence, to establish subject matter jurisdiction to claims against a foreign state, a would-

be plaintiff must identify a viable exception to immunity within the four corners of the FSIA and

show that the exception covers the sovereign conduct forming the basis for the claims.

Dominican Energy, 903 F. Supp. at 1512; see, e.g., Gerding v. Republic of France, 943 F.2d 521,

526 (4th Cir. 1991) (when a claim is filed against a foreign state, "the burden shifts to the

opposing party to raise the exceptions to sovereign immunity and assert at least some facts that

would establish the exceptions") (emphasis added); Stena Rederi AB v. Comision de Contratos

del Comite, 923 F.2d 380, 390 fn.14 (5th Cir. 1991). If no exception applies, the claims against

the sovereign must be dismissed.  See Samco Global Arms, 395 F.3d at 1218 (affirming

dismissal of claims against Honduras because they were not covered by a FSIA exception).

Here, the FSIA presumptively bars in personam claims against Spain because it is

undisputed that Spain is a sovereign state.  Accordingly, Odyssey must show that Spain's alleged

conduct, which forms a basis for the relief sought, is covered by an exception to sovereign

immunity.  Odyssey fails to do so.  Accordingly, Odyssey's claims against Spain must be

dismissed.

First, the Amended Complaint's jurisdictional section fails even to mention the FSIA.

See Amended Complaint ¶¶ 4-7.  Instead, without citing any authority, Odyssey declares that this

court may "exercise [] jurisdiction over Spain" to, among other things, "prevent the destruction

of this Court's actual and potential jurisdiction."  Id. ¶ 6.  Odyssey ignores, however, that the

FSIA provides the sole basis for the exercise of jurisdiction over Spain, a foreign sovereign.[7]

Amerada Hess., 488 U.S. at 434; Samco Global Arms, 395 F.3d at 1214.  Accordingly, all of the

claims that operate in personam against Spain must be dismissed for lack of subject matter

jurisdiction.  See Fed. R. Civ. P. 12(b)(1).

Second, where the Amended Complaint refers to the FSIA, it does so only in passing and

perfunctorily.  In Count V (also incorporated in Count VI), Odyssey alleges that "insofar as a

foreign sovereign may properly appear in this admiralty action as a claimant, as per 28 U.S.C. §§

---

[7] Like the Amended Complaint's jurisdictional section, Count III (asking for injunctive relief) does not refer to the FSIA, let alone identify any exception to sovereign immunity, even though an injunction would operate in personam against Spain.  See Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234-35 (1917) (concluding that the district court's issuance of an injunction against defendants over which the court had no personal jurisdiction was erroneous because "the injunction operates only in personam").  Count IV fares no better.  This Count likewise fails to refer to the FSIA, even though the broad declaratory judgment sought therein would purportedly restrict any "authority" Spain may have to "interfere" with Odyssey's activities.  See Amended Complaint ¶ 41.  Accordingly, these Counts, as applied to Spain, operate in personam and should be dismissed for lack of subject matter jurisdiction under the FSIA.

1605, 1607, this Court would have jurisdiction to adjudicate this count." <u>Amended Complaint</u>

¶ 43. This oblique reference falls far short of identifying the specific exception Odyssey relies

on here, much less showing that an exception actually applies to its claims against Spain. Thus,

Counts V and VI should be dismissed for lack of subject matter jurisdiction. <u>See</u> Fed. R. Civ. P.

12(b)(1); <u>Dominican Energy</u>, 903 F. Supp. at 1512.

      Third, Odyssey does not identify any exception to Spain's sovereign immunity because it

cannot do so with a straight face. The principal exceptions to sovereign immunity under the

FSIA consist of: (1) waiver; (2) commercial activity; (3) torts occurring in the United States; and

(4) admiralty actions to enforce a maritime lien "based upon a commercial activity of the foreign

state." 28 U.S.C. §§ 1605(a)-(b). Nothing in Odyssey's Amended Complaint even hints at the

application of any of these exceptions. In addition, Section 1607 provides an exception for

counterclaims in certain circumstances when a foreign state sues or makes a claim against a

private person in U.S. court. <u>See</u> 28 U.S.C. § 1607. Odyssey has filed no counterclaim in this

case since Spain has filed no claim against Odyssey. In short, no exception to FSIA covers

Odyssey's claims against Spain.

      For example, the "waiver" exception does not apply because Spain has fully reserved its

sovereign immunities in this case. <u>Verified Claim of the Kingdom of Spain</u> at 2 (Dkt. 14); <u>see,</u>

<u>e.g.</u>, <u>Rodriguez v. Transnave Inc.</u>, 8 F. 3d 284, 287 (5th Cir. 1993) ("[C]ourts rarely find that a

nation has waived its sovereign immunity without strong evidence that this is what the foreign

state intended"); <u>Coastal Cargo Co. v. M/V Gustav Sule</u>, 942 F. Supp. 1082, 1087 (E.D. La.

1996). Moreover, Spain has reserved "any other potential jurisdictional issue" in this case.

<u>Motion for More Definite Statement and/or Other Relief</u> at 1 fn.1 (June 19, 2007) (Dkt. 17).

Indeed, Spain is solely an <u>in rem</u> Claimant to the Defendant <u>res</u>, appearing specially to protect its

- 13 -

sovereign interests in any property of Spain which may be subject to adjudication in this proceeding.  See  Verified Claim of the Kingdom of Spain.  Nothing in Spain's filing of a claim in this case removes or limits in any way Spain's immunity from jurisdiction for in personam claims.  Cf. The Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as "The Sindia", 895 F.2d 116, 119 (3d Cir. 1990) ("[A] private party may not bring an in personam action, even in admiralty, against an unconsenting state.").

The fact that this in rem case concerns property in which Spain seeks to protect its interest does not detract in any way from Spain's immunity.  If anything, it highlights Spain's immunity.  Indeed, under the FSIA, the property of a foreign state is expressly immune from "attachment arrest and execution":

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

28 U.S.C. § 1604.  Vessels (or other property) of sovereign nations are thus immune from arrest by or other claims in U.S. courts like sovereigns are immune from in personam claims.  See, e.g., Mangatto v. M/V Ibn Hayyan, 35 F.3d 205 (5th Cir. 1994); O'Connell Machinery Company v. M.V. Americana, 734 F.2d 115 (2d Cir. 1984).

Finally, the Supreme Court has left no doubt that the exercise of police powers by a foreign sovereign is the classic example of a sovereign act subject to FSIA immunity.  In Saudi Arabia v. Nelson, 507 U.S. 349 (1993), the Supreme Court affirmed the dismissal of tort claims of wrongful arrest and detention by a U.S. citizen against Saudi Arabia.  The claims were based on the allegations that Saudi security agents mistreated plaintiff.  Nelson, 507 U.S. at 352-53.  The Court held that the claims were not excepted from FSIA immunity, explaining that the claims against Saudi Arabia were "based upon a sovereign activity immune from the subject-

- 14 -

matter jurisdiction of United States courts under the [FSIA]." <u>Id.</u> at 363.  The Court explained

that "a foreign state's exercise of the power of its police has long been understood for purposes

of the restrictive theory [codified in the FSIA] as peculiarly sovereign in nature." <u>Id.</u> at 361;

<u>First Merchants Collection Corp. v. Republic of Argentina</u>, 190 F. Supp. 2d 1336, 1339 (S.D.

Fla. 2002 ("[E]ven assuming . . . that Plaintiff's merchandise was unfairly, or even unlawfully,

confiscated by Argentine officials, such does not transform a clear exercise of sovereign police

power into a commercial activity.").

Similarly, Odyssey's new claims against Spain are premised on unsupported allegations

of "illegal," "tortious," or otherwise wrongful conduct by a Spanish court and related authorities

engaged in an investigation of Odyssey for possible violations of Spanish criminal laws.  <u>See</u>

<u>Amended Complaint</u> ¶¶ 22-24, 49.  As such, Odyssey's claims against Spain, which are

premised on far less serious allegations than those lodged against Saudi Arabia in <u>Nelson</u>, are

devoid of a jurisdictional basis and must be dismissed.  In short, Spain has sovereign immunity

against <u>in personam</u> claims in this case.  Accordingly, Counts III, IV, V, and VI must be

dismissed in their entirety or as they apply to Spain.

III.  <u>Count V's "Quantum Meruit" and "Unjust Enrichment" Claims Are<br><i>In Personam</i> and Are thus Barred as to Spain by Sovereign Immunity.</u>

Count V in Odyssey's Amended Complaint is the kind of <u>in personam</u> claim that is

barred by Spain's sovereign immunity.  As articulated by Odyssey, Count V is a claim for

"unjust enrichment," "quantum meruit," and unidentified "other equitable theories."  <u>Amended</u>

<u>Complaint</u> ¶ 46.  Claims of "unjust enrichment" and "quantum meruit" are inherently <u>in</u>

<u>personam</u> in nature because they target persons, not property.  As delineated within the Eleventh

Circuit, in Florida, a plaintiff presenting unjust enrichment and quantum meruit claims must

establish the following elements:

> (1) the plaintiff has conferred a benefit on the Defendant;
> (2) the Defendant has knowledge of the benefit; (3) the
> Defendant has accepted or retained the benefit conferred;
> and (4) the circumstances are such that it would be
> inequitable for the Defendant to retain the benefit without
> paying fair value.

Media Services Group, Inc. v. Bay Cities Communications, Inc., 237 F.3d 1326,

1330 (11th Cir. 2001); Posely v. Eckerd Corp., 433 F. Supp. 2d 1287, 1313-14

(S.D. Fla. 2006).

An inanimate Defendant res such as a shipwreck does not have the

capacity to unjustly enrich itself or to incur quasi-contractual obligations.[8] Thus,

quantum meruit and unjust enrichment are obviously in personam claims.

Consequently, Count V should be dismissed for lack of subject matter jurisdiction

as to Spain pursuant to the FSIA, as discussed in Section II.C above.

IV.    Odyssey's Count VI Is a Classic Example of an *In Personam* Claim Against a Foreign
       State Which Is Subject to Dismissal.

Odyssey's new Count VI claiming damages against Spain falls squarely within the

restrictions to judicial review set forth by the FSIA and the Act of State doctrine.  In Count VI,

Odyssey claims monetary damages against Spain for the existence and conduct of an

investigation of Odyssey by a Spanish court.  Odyssey conclusorily calls the conduct of the

investigation, as Odyssey alleges it, "illegal," "unlawful," and "tortious."[9]  Amended Complaint

---

[8]  Plaintiff's quantum meruit and unjust enrichment claims have apparently been added as Florida-law fallbacks to
its Count II law of salvage claim in admiralty.  However, the Eleventh Circuit has made clear that "[t]he law of
salvage generally governs efforts to save vessels in distress."  International Aircraft Recovery, Inc. v. Unidentified,
Wrecked and Abandoned Aircraft, 218 F.3d 1255, 1258 (11th Cir. 2000).

[9]  Odyssey also implausibly alleges violation by Spain of a "duty" under the ex parte arrest and appointment of
Odyssey as substitute custodian.  Amended Complaint ¶ 50.  Nothing in the symbolic arrest of the res or in the
(continued...)

- 16 -

¶¶ 23, 49. According to Odyssey, Spain may be held liable in a U.S. court for damages arising from the "detention and blockage" of Odyssey's vessels; Odyssey's costs of defense against an order of a Spanish court; the "boarding and seizure" of Odyssey's vessels and items in those vessels; the treatment of "crew and attorneys" during the execution of a court-ordered search; and "loss of reputation" caused by Spanish government authorities.[10] Id. ¶ 51. Odyssey's Count VI is thus the classic example of a claim that seeks to have a U.S. court review and second-guess the exercise and discharge by a foreign state of its law-enforcement and public functions.

Taking Odyssey's factual pleadings as true for purposes of a motion to dismiss, Odyssey's Count VI flies in the face of the FSIA and the Act of State doctrine. First, as discussed more fully in Section II.C above, Odyssey has not and cannot identify an applicable exception to the FSIA which would support jurisdiction over Count VI and other in personam claims against Spain. Second, the Act of State doctrine recognizes that the sovereign acts of foreign nations should not be second-guessed or reviewed by U.S. courts. To "permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations." Oetjen v. Cent. Leather Co., 246 U.S. 297, 304 (1918). Yet, Odyssey asks

---

appointment of Odyssey as substitute custodian in this case purports to immunize Odyssey from the criminal laws of other nations or to confer in personam jurisdiction over Spain. Cf. The Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as "The Sindia", 895 F.2d 116, 120 (3d Cir. 1990) (concluding that state sovereign immunity in the Eleventh-Amendment context bars jurisdiction over "circuitous in personam action[s] to obtain jurisdiction over a State for purposes of money damages").

[10] Odyssey fails to identify with any specificity how damage to its reputation was "caused by Spain's activities and statements made in public by Spanish authorities . . . ." Amended Complaint ¶ 51(f). Nor does it set forth any recognizable legal theory for such a claim. This claim is accordingly subject to dismissal for failure to state a cause of action. See Fed. R. Civ. P. 12(b)(6). But in any event, Count VI makes clear that Odyssey seeks to have this court review the public acts of "Spanish authorities," for which there is no jurisdiction even if Odyssey had properly set forth an otherwise viable cause of action for damage to its reputation.

this court to examine the law-enforcement acts of a Spanish tribunal and its officers, and to grant

relief for these allegedly "illegal" and "tortious" acts.

The Act of State doctrine requires U.S. courts to accept the sovereign acts of a foreign

government, carried out under its laws and procedures, as lawful:

> [The act of state doctrine] requires only that, when it is made to
> appear that the foreign government has acted in a given way on the
> subject-matter of the litigation, the details of such action or the
> merit of the result . . . must be accepted by our courts as a rule for
> their decision.

Ricaud v. American Metal Co., 246 U.S. 304, 309 (1918) (emphasis added); see also W.S.

Kirkpatrick & Co. v. Env'l Tectonics Corp., 493 U.S. 400 (1990).  When allegations made in a

case seek to have the court review or adjudicate the acts of a foreign sovereign outside the

United States, even if only indirectly, those allegations should be dismissed.  See Glen v. Club

Mediterranee, S.A., 450 F.3d 1251, 1253 (11th Cir. 2006); World Wide Minerals, Ltd. v.

Republic of Kazakhstan, 296 F.3d 1154, 1165-66 (D.C. Cir. 2002).  As the Supreme Court has

explained, the Act of State doctrine bars review of public acts of other sovereigns even where a

U.S. court may have jurisdiction over some aspect of the matter in controversy:

> Unlike a claim of sovereign immunity, which merely raises a
> jurisdictional defense, the act-of-state doctrine provides foreign
> states with a substantive defense on the merits.  Under that
> doctrine, the courts of one state will not question the validity of
> public acts (acts jure imperii) performed by other sovereigns
> within their own borders, even when such courts have jurisdiction
> over a controversy in which one of the litigants has standing to
> challenge those acts.

Republic of Austria v. Altmann, 541 U.S. 677, 700 (2004).

As noted earlier, the Supreme Court has applied the FSIA to bar claims allegedly arising

from the exercise of police power in another nation.  See Saudi Arabia v. Nelson, 507 U.S. 349

(1993).  Cases dealing with similar claims reach the same result under the Act of the State

doctrine as an alternative and equally settled bar to U.S. review. For example, tort claims against Argentina for the law-enforcement acts of Argentinean officials have been dismissed under the Act of State doctrine. First Merchants Collection Corp. v. Republic of Argentina, 190 F. Supp. 2d 1336 (S.D. Fla. 1995). Similarly, claims premised on alleged wrongful detention by Bolivian authorities have been dismissed under the doctrine. Duchow v. United States, No. 95-2121, 1995 WL 425037, at **3-4 (E.D. La. July 19, 1995). See also Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1293-94 (11th Cir. 2001) (affirming dismissal of counterclaims premised on Venezuela's alleged intervention in corporate activity and confiscation of corporate property). Odyssey's Amended Complaint seeks to have this court sit in judgment on the order of a Spanish court and on how this order was carried out.[11] The Act of State doctrine precludes such consideration.

Additionally, even if Spain were not a foreign state and this case concerned activity in the United States, an admiralty claim by a would-be salvor must yield to the exercise by governmental authorities of their police, regulatory, and other sovereign powers. This court has refused to restrict state police powers in admiralty cases in rem, even if the exercise of these powers may interfere with a private person's salvage operations. See Lathrop v. Unidentified, Wrecked and Abandoned Vessel, 817 F. Supp. 953, 964 (M.D. Fla. 1993); see also Great Lakes

---

[11] Spain does not accept Odyssey's self-serving version of events concerning the criminal investigation. Odyssey's allegations of wrongdoing by Spanish authorities appear to be principally intended to distract from the original admiralty issues before this court. Odyssey submits only hearsay, at best, by Mr. Stemm, whose declaration makes no claim that he was even present when the search of an Odyssey vessel was conducted by Spanish enforcement officials. See Sworn Statement of Gregory Stemm (July 5, 2007) (Dkt. 26-2). Nor does Odyssey identify the Spanish or other law that it claims was violated. If Odyssey has any real grounds to challenge the orders of a court in Spain, or how that order was carried out, Odyssey's filings show that it has engaged counsel in Spain to raise any such claim with the proper authorities there. See, e.g., Amended Complaint ¶ 23. If there is anything that Odyssey's motion does show, it is the soundness of the FSIA and Act of State doctrine in prohibiting a U.S. court from reviewing the legal status or validity of an order issued by a court in Spain, whether that order conformed to Spanish law, or whether Spanish law-enforcement officials properly carried out that order.

Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878 (W.D. Mich. Nov. 20, 2006) (denying claim for preliminary injunction as to a shipwreck that would, if granted, "limit the ability of" a state to exercise and enforce its police powers, regulatory responsibilities, and other functions).

Finally, Odyssey's vague Count VI claim that "Spain's activities and statements made in public by Spanish authorities" caused "loss of reputation" must fare no better. Amended Complaint ¶ 51(f). The FSIA specifically provides that there is no exception to sovereign immunity for "any claim arising out of . . . libel, slander or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B). Accordingly, in Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah, 184 F. Supp. 2d 277, 293-96 (S.D.N.Y. 2001), the court dismissed claims alleging that Jordanian officials damaged a U.S citizen's reputation and interfered with the plaintiffs "prospective business advantage." Likewise, in Bryks v. Canadian Broadcasting Corp., 906 F. Supp. 204 (S.D.N.Y. 1995), claims of defamation against a Canadian government entity were dismissed under FSIA because such claims fall within no FSIA exception. The court held that the FSIA's "specific exclusion of defamation claims was intended as a general limitation on the liability of a foreign sovereign under the FSIA." Odyssey's obscure "loss of reputation" claim should be similarly dismissed.

In sum, Odyssey's in personam claims are barred by the FSIA and the Act of State doctrine because they are based on allegedly wrongful conduct by Spanish judicial and other authorities engaged in the discharge of sovereign functions and responsibilities.

\*    \*    \*

For the reasons stated above Spain respectfully submits that (1) Counts I and II regarding the Defendant res should be dismissed for failure to comply with Supplemental Rules C and E;

(2) the arrest of the Defendant Shipwreck should be vacated; (3) the appointment of Odyssey as

substitute custodian for the shipwreck and any and all artifacts taken from the shipwreck should

be terminated; and (4) the U.S. Marshal should be restored to custodianship of all artifacts taken

from the Defendant.[12]  Additionally, Counts III, IV, V, and VI against Spain should be dismissed

for improper service, lack of personal jurisdiction, and lack of subject matter jurisdiction, and

under the Act of State doctrine.

Respectfully submitted,

Dated: September 19, 2007                   /s James A. Goold
                                           James A. Goold
                                           District of Columbia Bar # 430315
                                           Covington & Burling LLP
                                           1201 Pennsylvania Ave., NW
                                           Washington, DC 20004
                                           Telephone: (202) 662-5507
                                           Fax: (202) 662-6291
                                           E-mail: jgoold@cov.com


                                           David C. Banker
                                           Florida Bar # 352977
                                           Bush Ross, PA
                                           220 S. Franklin Street
                                           P.O. Box 3913
                                           Tampa, Florida  33601-3913
                                           Telephone:  (813) 224-9255
                                           Fax:  (813) 223-9255
                                           E-mail: dbanker@bushross.com

---

[12]  If the court were to deny this motion as to Odyssey's claims against the Defendant Shipwreck, Spain respectfully submits that Odyssey should at minimum be ordered to file forthwith a second amended complaint that contains all information in Odyssey's possession relevant to identification of the Defendant Shipwreck, including (i) the vessel identified by Odyssey's research, and (ii) the nature, origin and characteristics (including date(s)) of the artifacts taken from the Defendant Shipwreck.

Certificate of Service

I hereby certify that I caused the attached Motion of the Kingdom of Spain to Dismiss and for Other Relief in Case No. 8:07-cv-00616-SDM to be served via the Court's CM/ECF system this 19th day of September, 2007.

James A. Goold
District of Columbia Bar # 430315
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com

DC: 2620990-1