IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.

      Plaintiff,                               CIVIL ACTION

vs.                                         Case No.:  8:07-CV-00616-SDM-MAP

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, its apparel, tackle, appurtenances,
and cargo located within center point
coordinates:  (to be provided to the Court
under seal), *in rem*,

      Defendant(s).
_____/

**PLAINTIFF'S REPLY TO CLAIMANT KINGDOM OF SPAIN'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

    Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by and through its undersigned counsel, and submits this Reply to Kingdom of Spain's ("Spain") Opposition to Plaintiff's Motion for Protective Order (Dkt. 43), and in support thereof states as follows:

**MEMORANDUM OF LAW**

    Odyssey has moved this Court for an order granting its request that the Preliminary Site Assessment ("PSA") be held under seal and certain restrictions be placed on the PSA prior to any release of the PSA to Spain.  Spain, however, has thus far refused to agree to protect the information contained within the PSA.  Odyssey expressly conditioned the voluntary production of the PSA to Spain on this Court granting the requested protections.  If Odyssey's Motion is not granted, the PSA should not be voluntary provided to Spain.

Dockets.Justia.com

However, should this Court order the disclosure of the PSA to Spain, this Court should exercise its discretion to protect the sensitive site and the confidential trade secret information by limiting the disclosure of the PSA as requested in Odyssey's Motion.

**I.    Odyssey Has Met All Pleading Requirements of the Supplemental Rules.**

Spain's Opposition to Plaintiff's Motion for Protective Order is based in part upon its argument that Odyssey has failed to meet the pleading requirements in that it has not adequately identified the property it claims and information contained within the PSA is required to be plead.[1]  This argument is without merit.  A salvor is required to describe the property with reasonable particularity such that the claimant will be able to commence an investigation and form a responsive pleading. U.S. v. $38,000.00 Dollars in U.S. Currency, 816 F.2d 1538, 1548 (11th Cir. 1987); Supplemental Rule C(6); Supplemental Rule E(8). Odyssey has clearly set forth the required information in its Amended Complaint.

Odyssey has located the Defendant Site, disclosed to Spain the general geographical location of the site and explained that it has not recovered sufficient evidence which would confirm the identity of a particular ship, but believes that the material recovered to date from the Defendant Site to be from an Italian registered passenger liner that sunk in 1915 during World War I.  (Amended Verified Complaint ¶ 17,18; (Dkt. 29)).  This information is sufficient for Spain to commence an investigation of its claim, considering that they will also receive the sealed geographical information upon their agreement to keep the information confidential.  See Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels,

---

[1] Spain's contention will be fully addressed in Odyssey's Opposition to Spain's Motion to Dismiss, which is incorporated herein.

etc, in rem, 352 F.Supp.2d 1218, 1226 (S.D. Ala. 2005). Accordingly, Odyssey has met the pleading requirements for *in rem* claims.

This Court properly granted a Warrant of Arrest on the Defendant Site based upon Odyssey's initial Verified Complaint and issued an order appointing Odyssey substitute custodian for the artifacts recovered. As such, this Court has recognized Odyssey is the custodian of the artifacts, and Odyssey has properly pled all conditions to being salvor in possession of the Defendant Site. The information contained within the PSA is simply not required to be unconditionally disclosed as argued by Spain.

## II.   The PSA Contains Confidential Information That Should be Protected.

As outlined in Odyssey's Motion, the preparation of the PSA involved vast expenditures of time and expertise in researching, locating, and conducting the archaeological excavation of the site. This information necessarily requires vast amounts of historical research and the use of proprietary techniques for search and excavation of the site, including the recovery of artifacts that are unique to Odyssey and are a critical component of Odyssey's competitive advantage in the field of marine exploration. See Treasure Salvors, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel, 546 F.Supp. 919, 927-928 (S.D. Fla. 1981) (recognizing sensitive nature of historical shipwreck sites and extensive research required to locate wrecks). Such information is clearly protected from disclosure under the Federal Rules of Civil Procedure and applicable case law. Fed. R. Civ. P. 26(c)(7); Great Lakes Exploration Group LLC v. The Unidentified, Wrecked And (For Salvage-Right Purposes), Abandoned Sailing Vessel, Etc., 2006 WL 2431390, 1, 5 (W.D.Mich. 2006) (protective order granted allowing location of wreckage to be filed under seal and requiring

parties to keep location in strict confidentiality); Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 110 (S.D.N.Y. 1997) (granted protective order regarding financial information obtained at considerable cost from potential disclosure to competitors); GTE Products Corp. v. Gee, 112 F.R.D. 169 (D.Mass. 1986) (protective order granted preventing disclosure of trade secret, confidential information, and other commercial information); Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) (recognizing prejudicial effect of premature disclosure of wreck information and refusing to unseal list of recovered inventory).  Additionally, the PSA contains information regarding an ongoing archaeological recovery and salvage operation.  Disclosure of the sensitive site information contained within the PSA, including the artifact inventory, characteristics of the site and locational information would greatly prejudice the security of the site.  See Treasure Salvors, Inc., 546 F.Supp. at 927-928.  Thus, the information sought to be protected by Odyssey is clearly of the type which requires protection.

Additionally, because Odyssey's common stock is publicly traded (NASDAQ: ticker OMEX), Odyssey is subject to extensive regulation by the Securities and Exchange Commission (SEC) in relation to the release of material, non-public information about its business and operations.  All individuals having access to the information sought by Spain are subject to non-disclosure agreements, attorney-client relationships, or similar legal protections against the unauthorized disclosure of this information.  Odyssey should not be placed in the position of disclosing material, non-public information to Spain without an appropriate confidentiality agreement which includes specific guarantees with respect to

insider trading and other issues that could result in damages to Odyssey, its shareholders, and other constituents.

Despite the nature of the information contained within the PSA, Odyssey has offered to provide the PSA to Spain once this Court granted Odyssey protections to the confidentiality of the information contained within the PSA – both to protect the integrity of the Defendant Site and to protect Odyssey's proprietary and trade secret information.  It goes without saying that information obtained through discovery in a civil proceeding cannot be used for any purpose unrelated to the litigation.   See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35-36 (1984).   Odyssey is simply seeking the protection of the Defendant Site, trade secrets and other confidential research to which it is entitled at law.   Release of this information without appropriate protections would not only potentially harm the site, but also potentially impair the rights of Odyssey, Odyssey's shareholders and any other potential claimants to the site when and if they can be identified.

Spain has indicated that the general terms and conditions of a proposed protective order are too onerous and restrictive.  That is not Odyssey's intent.  Odyssey would be satisfied by a protective agreement entered into by Spain that would allow the disclosure of information to Spain's ministers, officers, employees, experts, consultants and counsel, provided all are covered by the confidentiality and non-disclosure provisions.  Odyssey is also prepared, within the scope of the protective agreement, to allow individuals designated by Spain to physically examine artifacts recovered from the Defendant site (undergoing conservation in the district and within this Court's jurisdiction), under mutually agreeable conditions.

Odyssey's Motion for a Protective Order should be granted.

Respectfully submitted,

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida  33601
(813) 228-7411
Facsimile:  (813) 229-8313
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC  20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P. O. Box 3913, Tampa, FL  33601, *Attorneys for Claimant, Kingdom of Spain*.

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida  33601
(813) 228-7411
Facsimile:  (813) 229-8313
Attorneys for Plaintiff

2410190