IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division
In Admiralty

| | | |
|---|---|---|
| ODYSSEY MARINE EXPLORATION, INC. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | | Case No: 8:07-CV-00616-SDM-MAP |
| | : | |
| THE UNIDENTIFIED, SHIPWRECKED | : | |
| VESSEL, if any, its apparel, tackle, | : | |
| appurtenances, and cargo located within | : | |
| a five mile radius of the center point | : | |
| coordinates provided to the Court under seal, | : | |
| | : | |
| Defendant. | : | |
| *in rem* | : | |
| | : | |
| and | : | |
| | : | |
| The Kingdom of Spain, | : | |
| | : | |
| Claimant. | : | |
| _____/ | : | |

## PLAINTIFF'S RESPONSE TO KINGDOM OF SPAIN'S MOTION TO SEAL PURSUANT TO ORDER OF FEBRUARY 22, 2008

This Response is an identical filing being made in cases 8:06-CV-1685-SDM-MAP, 8:07-CV-0614-SDM-MAP, and 8:07-CV-0616-SDM-MAP.

This Honorable Court recognized at the last pretrial conference that Odyssey Marine Exploration, Inc. ("Odyssey") has a significant financial interest in the information, artifacts, photographs, compilations, videos, and location of the respective sites. It should be noted that Odyssey derives a substantial amount of its income from the sale of photographs,

videotapes, rights to documentaries, and exhibits. It is the position of Odyssey that the attachments to Spain's motion (Dkt. 87) are all, in whole or in part, items that Odyssey intends to sell, lease or use in marketing that will be greatly reduced in value if they are made public and Odyssey cannot control their distribution.

The federal courts have relied upon the definition presented in Section 757 of the Restatement of Torts. In the case of <u>Demit of Venezuela C.A. v. Electronic Water Systems, Inc.</u>, 547 F.Supp. 850, 852 (S.D. Fla. 1982), the Court cited <u>Keystone Plastics, Inc. v. C&P Plastics, Inc.</u>, 340 F.Supp. 55 (S.D. Fla. 1972), 506 F.2d 960 (5th Cir. 1974) where Judge King defined a trade secret as:

> any formula, pattern, device or compilation of information which is used in one's own business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.

See Restatement of Torts, Section 757, Comment (b) (1939). The <u>Demit</u> Court went on to cite the Seventh Circuit case of <u>Forest Laboratories v. Pillsbury Company</u>, 452 F.2d 621 (7th Cir. 1971) which expands the definition of trade secrets as:

> Information (1) is used in one's business, (2) which gives him an opportunity to obtain an advantage over competitors who do not know or use it, (3) which is secret, *i.e.*, not common knowledge of the trade, (4) which is maintained in secrecy by the owner, (5) which is of value to a competitor, and (6) which was acquired at some expense to or effort by its owner.

<u>Keystone Plastics</u> at 74. The Uniform Trade Secrets Act, which was adopted in Florida, at Florida Statutes § 688.01 defines a trade secret as information that:

> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

2

See Jadael, Inc. v. Elliott Slip Copy, 207 WL 2480387, page 6 (M.D. Fla. 2007).

It is respectfully submitted that the attachments to Spain's motion all fall within the definition of trade secrets as adopted by the federal courts. Therefore, each of the exhibits falls within the definition of trade secret as set forth in paragraph 2 of the Protective Order Governing Disclosure of Certain Information (Dkt. 80) entered by this Court.

As the Court already appreciated, there is a significant value to the artifacts, the location of the site, and the research that has been performed by Odyssey to identify the artifacts. In the sealed attachment hereto, the Affidavit of Laura L. Barton, it is explained in more detail how the release of any of these documents would adversely affect the interest of Odyssey and Odyssey's thousands of shareholders. There is no question that Odyssey has expended vast amounts of money and resources in obtaining the documents that Mr. Goold wants to be made public. The majority of the information from these sites has been kept secret and has not been released to the public, with the expectation that in the future they would present a marketable commodity. The release of any of these documents, photographs, mosaics, videos, or lists of artifacts would have a tremendously detrimental effect on Odyssey's ability to recoup the money that it has expended on this project. For the reasons set forth above, each of the exhibits attached to Spain's motion falls within the definition of "trade secrets."

Additionally, there is the question of site security. The photographs set forth the nature of the seabed upon which the salvage site is located. Although this may not give exact coordinates of the location of the site, an experienced salvor or surveyor with some rudimentary information which could be gleaned from images of the site would be able to

quickly find the exact locale of the remaining artifacts by viewing the film and/or the photographs and then looking for a seabed anomaly that provides the same signature. With this data, Odyssey's own team would have been able to determine which of the scores of anomalies in the area constituted the arrested sites almost immediately. Additionally, marine biologists might be able to deduct the type of sea life in the area and make determinations as to more specific location on the basis of said sea life.  Last, but by no means least, a vessel with a side scan-sonar could, upon citing various anomalies and comparing them to photomosaics, determine immediately whether they have found one of the Odyssey sites or not.  Considering the risk, expense and time incurred by Odyssey to find these sites, it is not appropriate to make this information available to the public so that other salvors can, at no expense, use the information to find the sites.  It is also not appropriate to take Odyssey's research efforts and make them public before Odyssey is ready to make a meaningful disclosure to the public in a fashion from which it can reap the benefit from the efforts that it has made on behalf of the company's shareholders.  Odyssey also has the right to control the timing and the manner in which it shares with the public the historical and archaeological significance of its recoveries.

Pursuant to the Court's Order, the following is a list of documents as identified by Group in Spain's Motion to Seal, and the legal justification for keeping each confidential.

**Group A:  Artifact Summary Lists and Photographs.**

> These lists are protected trade secrets.  They constitute "a compilation of information which is used in one's own business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," as defined in the Restatement of Torts and adopted through case law.

Odyssey generates significant revenue from the artifacts and
documentation related to them which includes images of the artifacts.
Release of these would adversely affect the financial interest of Odyssey
and its shareholders, for which there would be no recourse.

Odyssey has the right to control when this information is released to the
public. The timing of the release of the information is inextricably tied to
its value.

Information gained from review of the artifact lists and photographs would
jeopardize the security of the site. It may provide clues or speculation as
to the theoretical identity of the sites. If such speculation – whether
accurate or not – were to lead competing salvors to believe that there may
be significant value to any items remaining at the site, it would create a
tremendous incentive for them to attempt to locate the site on their own
and potentially engage in illegal activities directed at the site in violation
of this Court's Orders. To the extent that those competing salvors may be
foreign and would not voluntarily subject themselves to the jurisdiction of
this Court, Odyssey would have no recourse to recover the damages
caused.

Spain has presented no valid reason for public disclosure of the
documentation.

**Group B:  Two site plans of the Case No: 8:06-CV-1685 vessel**

The site plans are protected trade secrets. They constitute "a compilation
of information which is used in one's own business and which gives him
an opportunity to obtain an advantage over competitors who do not know
or use it," as defined in the Restatement of Torts and adopted through case
law. The manner in which the plans are compiled as well as the images
themselves, reveal significant information regarding this aspect of
Odyssey's business, and release of these plans for competitors to view
would deprive Odyssey of an advantage it has spent considerable time and
resources developing in the industry – an advantage exactly the type
sought to be protected by the law.

The images themselves are creative productions of Odyssey, release of
which could adversely affect the financial interest of Odyssey and its
shareholders, for which there would be no recourse.

Odyssey has the right to control when this information is released to the
public. The timing of the release of the information is inextricably tied to
its value.

Information gained from review of the site plans would jeopardize the security of the site by specifically indicating to others the precise appearance of the site on the seabed. With such information, it would be relatively simple to determine whether a side-scan sonar anomaly represents the site in question. This would, in turn, make it very easy for someone with basic acoustic search technology to locate the site.

Spain has presented no valid reason for public disclosure of the documentation.

**Group C: Photographs of artifacts on the seabed from the Case No.: 8:07-CV-00614 site**

These photographs are protected trade secrets. They constitute "a compilation of information which is used in one's own business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," as defined in the Restatement of Torts and adopted through case law.

Release of underwater photographs would adversely affect the financial interest of Odyssey and its shareholders, for which there would be no recourse. Odyssey generates significant revenue from photographs and images such as these. The equipment and expertise necessary to obtain these photographs has taken Odyssey years to develop. If the photographs were to be made public, anyone at any time could download and print the images, and Odyssey would completely lose the opportunity for revenue from the photographs as well as its investment in developing the expertise to obtain them.

Odyssey has the right to control when the photographs are released to the public. The timing of the release of the photographs is inextricably tied to their value.

Information gained from review of the photographs could jeopardize the security of the site by specifically indicating to others the precise appearance of the site on the seabed. With such information, it would be relatively simple to determine whether a side-scan sonar anomaly represents the site in question. This would, in turn, make it very easy for someone with basic acoustic search technology to locate the site.

Spain has presented no valid reason for public disclosure of the photographs.

**Group D: Photomosaics**

    The photomosaics are protected trade secrets. They constitute "a compilation of information which is used in one's own business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," as defined in the Restatement of Torts and adopted through case law. The manner in which the site photomosaics are compiled as well as the images themselves, reveal significant information regarding this aspect of Odyssey's business, and release of these images for competitors to view would deprive Odyssey of an advantage it has spent considerable time and resources developing in the industry – an advantage of exactly the type sought to be protected by the law.

    Odyssey generates significant revenue from media which incorporates the photomosaic images, as well as the reproductions of the images themselves. Release of these would adversely affect the financial interest of Odyssey and its shareholders, for which there would be no recourse.

    Odyssey has the right to control when the photomosaics are released to the public. The timing of the release of these is inextricably tied to their value.

    Information gained from review of the photomosaics would jeopardize the security of the site by specifically indicating to others the precise appearance of the site on the seabed. With such information, it would be relatively simple to determine whether a side-scan sonar anomaly represents the site in question. This would, in turn, make it very easy for someone with basic acoustic search technology to locate the site.

    Spain has presented no valid reason for public disclosure of the documentation.

Finally, it should be noted that, all of the documentation discussed herein has been produced by Odyssey to Spain, in good faith and pursuant to the Court's Order, and there is absolutely no detriment to Spain in keeping the exhibits attached to their motion confidential. If Spain is, in fact, interested in preserving the sites and the artifacts, it is certainly in its best interest to keep the information in the exhibits attached confidential. The only benefit to Spain in releasing the information in the exhibits to their motion would be if they are trying to financially harm Odyssey by either diminishing the

intellectual value of the property or making it easier for other salvors to discover the location of the sites. That is not an appropriate reason to make documents public. It is requested that this motion be heard *in camera* so that the parties can discuss additional reasons as to why keeping documents confidential for the time being is in the best interest of all parties, and most importantly, the security of the site.

Respectfully submitted,

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313


s/ Melinda J. MacConnel
Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 4, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC 20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P. O. Box 3913, Tampa, FL 33601, *Attorneys for Claimant, Kingdom of Spain.*

      s/ Allen von Spiegelfeld
      Allen von Spiegelfeld – FBN 256803
      avonsp@fowlerwhite.com
      Eric C. Thiel – FBN 016267
      ethiel@fowlerwhite.com
      FOWLER WHITE BOGGS BANKER P.A.
      P.O. Box 1438
      Tampa, Florida 33601
      (813) 228-7411
      Facsimile: (813) 229-8313

      s/ Melinda J. MacConnel
      Melinda J. MacConnel – FBN 871151
      Odyssey Marine Exploration, Inc.
      5215 West Laurel Street
      Tampa, FL 33607
      (813) 876-1776, ext. 2240
      Fax: (813) 830-6609
      E-mail: mmacconnel@shipwreck.net

      Attorneys for Plaintiff